IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

Derrek Pannell
Petitioner

:
:
:
:
:                    Docket No. _____
Verses,                    :
:
:
Donna Zickefoose          :
Warden, FCI Fort Dix      :
Respondant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO
TITLE 28 U.S.C. §2241

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes Now, ___Derrek Pannell_____, Unrepresented, a prisoner
currently incarcerated at _Federal Correctional Institute Fort Dix_,
AND HE DOES BRING THIS ACTION, A writ of Habeas Corpus, claiming a
deprivation of his liberty interest with violations of due process
rights. Petitioner challenges the charges of those alleged and pre-
sented by officials within the Federal Bureau Of Prisons and now
being enforced through his continuing incarceration by the Warden,
_Donna Zickefoose_____ at _FCI Fort Dix_____.

-1-

<u>2 2 4 1</u>

<u>I S S U E S   P R E S E N T E D</u>

1)   The failure to provide this petitioner notice that the punish-
ment for the charged conduct had been increased from a moderate
level violation to the greatest severity level violation did in
fact violate due process because the change increased his exposure
to more severe consequences, and

2)   rule changes must be made through the Administrative Proced-
ures Act, (APA), and the failure to do so with regards to the change
of  B.O.P. rules governing possession of a phone precludes the
rules enforcement, and

3)   the law/rule is void for vagueness as if its prohibitions are
not clearly defined, where fair notice was lacking, and

4) this petitioner has been treated differently from other sim-
ilarly situated individuals  and this disparity amounts to an
equal protection violation.

## SUMMARY OF FACTS

**This Petitoner**, while incarcerated at Fort Dix FCI in Fort Dix New Jersey, was charged with a violation of prison conduct and received an incident report. The report charged a PAC 305, "...Possession of anything not authorized...". The charge was changed by the DHO to a 100 series offense, specifically a 108, without written notice[1]. This petitioner was subsequently found guilty and received a sanction which consisted of, 40 days disallowed good time, 30 days segregation suspended for 90 days pending clear conduct, restriction of: commissary for 60 days, one year phone, one year computer, and 60 days of visits.

Thereafter, this petitioner exhausted his adminstrative remedy process arguing that "due process" violations have been committed.

This §2241 action filed by this petitioner is a result of the unsuccessful resolution of the administrative appeals process within the F.B.O.P.. Those appeals have run there course and hve been fully exhausted. There is no possibility that this petitioner could in any way secure the relief to which he asserts he is entitled by further litigation through any internal avenues available in the F.B.O.P..

---

1. P.S. 5270.09 (c) "Timing". You will receive written notice of the charge(s) against you at least 24 hours before the DHO's hearing...". IN the instant matter no written notice was provided, the charge as written is PAC 305.

## D E C L A R A T I O N

This Petitioner, __Derrek Pannell_____, unrepresented, does affirm and declare under penalty of perjury, pursuant to Title 28 U.S.C. §1746, that the statements, facts, and declarations made herein are true to the best of my knowledge.

This Petitioner does respectfully request that this court do interpret this pleading with the understanding that this Petitioner is untrained in the law. Petitioner does further request that this court do interpret this action in accordance with the principles as set forth in Haines V. Kerner, 404 US 519 (1972); Estelle V. Gamble, 429 US 97 (1976); Hughes V. Rowe 449 US 5 (1980); and de'Lonte V. Angelone 330 F.3d. 630, 633 (4th Cir. 2003). This Petitioner does ask that this court do construe and interpret this filing liberally and that he not be held to the same exacting standard that a trained attorney might be.

## J U R I S D I C T I O N   A N D   V E N U E

Since this Petitioner is currently being detained at the federal prison known as __FCI Fort Dix_____ and is located at __Fort Dix New Jersey_____, THEREFORE, this court is vested with exclusive jurisdiction pursuant to 28 U.S.C. §2241.

Based upon this challenge to the conditions of his confinement, his liberty interest and violations of his due process rights, including faults in the Administrative Proceedings, this action is brought.

-4-

## RESPONDANT

Donna Zickefoose is the Warden of the facility that is currently detaining the petitioner described herein and therefore is the proper respondant to this action.

## FACTS AND RELEVANT BACKGROUND

**I)**  This petitioner, Derrek Pannell is currently serving a total prison sentence of 25 years which is to be follwed by a term of supervised release totaling 5 years. This sentence was imposed as a conviction for the offense of U.S.C.A §371, §2114(a), and 924(c)(1)(a).

**II)**  This petitioner was being detained at FCI Fort Dix, when on 12/2/2010 he was charged with PAC 305, and then found to be guilty of PAC 108-possession of a hazardous tool. This petitioner has exhausted all of his administrative appeals concerning this action which resulted in the following sanctions: 40 days disallowed good conduct time, 30 days segregation suspended for 90 days pending clear conduct, commissary for 60 dyas, one year of phone, one year of computer, and 60 days of visits, See exhibit "A"(copy of sanctions and the F.B.O.P. reason for imposing such extreme sanctions).

## ISSUE ONE

The failure to provide this petitioner with notice that the punishment for the charged conduct had been increased from a moderate level to a severe level violated due process since this increase altered the legal consequences of the act thus affecting good time credits.

There is no disputing the fact that "possession of electronic equipment associated with a cell ½hone", is punishable within the Federal Bureau of Prisons. However, at the time this petitioner was found to be in violation of this conduct, the violation was classified as a "PAC 305", which is BOP'S "catch all" violation relating to any contraband note otherwise specifically named.

When it came to formally charging this petitioner with an offense, petitioner was charged with a PAC 305. The DHO elected to identify the offense as a more severe category of offense, one that has substantially harsher penalty. Normally, PAC 305 violations are resolved without the inmate being exposed to the loss of good time already earned and/or future good time not yet earned.

This petitioner however received no legal notice that the offense for which he was charged, "...possession of electronic equipment associated with a cell phone...", had been elevated from a PAC 305 to a PAC 108. At the time of the instant offense, on 12-2-2010, PAC 108 failed to contemplate or encompass the conduct involving "possession of electronic equipment associated with a cell phone", See Exhibit B.

Petitioners exhibit B, by it's very language, makes clear that possession of a cell phone or related equipment was not intended to be encompassed by this version of PAC 108. The version in effect when the offense occurred stated:

> "Possession, manufacture, or introduction of a
> hazardous tool (tool most likely to be used in
> an escape attempt or as a weapon, or capable of
> doing bodily harm to others; or more hazardous
> to institutional security or personal safety;
> e.g. hack-saw-blade.)" See exhibit B

Another version, an amended version sought to be implemented
by the APA and proposed but never implemented stated:

> "Possession, manufacture, introduction, or loss
> of a hazardous tool, (tools most likely to be
> used in an escape or escape attempt or to serve
> as a weapon capable of doing serious bobily harm
> to others; or more hazardous to institutional
> security; e.g. hack-saw-blade, portable telephone,
> pager, or other electronic communication device.)"
> See exhibit C

This amended version, sought in July 2005, clearly would have
included and encompassed the offense of cell phone related equipment.
this evidences that the FBOP knew then, as it knew when this petitioner
was charged with the 100 series offense, that PAC 108 was not the
proper offense to bring against this petitioner.

The Director of the Bureau of Prisons explained that the
reasons for the change was because pAC 108, "as is currently the
only valid version", **DID NOT** contemplate possession of cellular
equipment, stating, "we make the change to incorporate technological
advances that were not present when the current rule was drafted.
See exhibit C

When this petitioner was admitted to the custody of Bureau of
Prisons, he was not placed on legal notice concerning the intent
of FBOP to charge individuals found to be in possession of cell
phone equipment with the PAC 108 offense. Logically therefore, it
would have been and was unreasonable to invision that the punishment
would be so severe.

It is an axiomatic principle of due process that a person should not be punished for conduct that has not been prohibited by law, and that for an individual to be punished for misconduct, he must be placed on notice of the prohibited conduct and the resulting punishment if he were to be found guilty of violating prohibited conduct. **Coffman V Trickey 884 F.2d 1057,1060**, citing **Grayned V City of Rockford 408 US 104, 108; 92 S.ct. 2294, 2298;** see also **Meig V Gunter 906 F.2d 364, 366 (8th cir. 1990)**.

For prison officials to comport with due process, they must provide fair notice of any rule changes even if an alleged memorandum does exist. This notice never occurred because the offense was never implemented into law.

This petitioner submits that the rules currently implemented are controlling, not the rules that the BOP would like to have controlling, like the proposed change to the PAC 108 as noted in exhibit C, see **Taylor V Perini 413 F.Supp. 189, 235**, (holding that posting is an insufficient form of notice because of its transitory effect).

Due process limits prison officials to holding petitioner responsible only for rules that were "in fact" provided to him by law. He was not provided such rules nor were such rules posted in the electronic law library as to language change in PAC 108. At the time of the offense PAC 108 failed to incorporate cellphone related equipment.

Due process prohibits prison officials from enforcing and punishing this petitioner for a violation of a rule he was not advised of or for which he received no notice concerning the punishment. The failure of the amended rules to be enacted, the failure to place a copy of the changes in the law library, and the act of in fact providing the petitioner with a copy that does not satisfy the notice requirement, all preclude the BOP from now holding this petitioner to the standard as though they had in fact placed him on notice concerning the prohibition and the

related punishment. Petitioners due process right's were violated.

Although policy considerations might urge the court to allow punishment for the more serious offense, the BOP should not be permitted to circumvent due process or the requirements of the Administration Procedures Act. "If BOP desires to enforce the more serious version of the PAC 108, they should legally enact that version".

The BOP still charges other acts of misconduct significantly more serious than that at issue here under the lesser severity offense codes that counsel against charging of the higher severity version. For example, escape equipment is a PAC 208 offense, while possession of money is a PAC 303 and possession of a uniform as a PAC 211, **Jones V Buck 549 US 199 (2007)** "Whatever temptation the statesmanship of policy making might wisely suggest, the judge must not lead in by way of creation, but instead abide by the duty of restraint, the humility of function, or merely the translation of another's command", also in **Wallace V Nash 311 F.3D 140 (2nd cir 2003)**, the court forbid the BOP from charging an inmate pursuant to PAC 104 for using a pool stick as a weapon, stating that if the BOP intended to cover 'use of any item as a weapon' in it's rules under PAC 104, it should amend the rule to state so.

For Due Process to effectively serve to protect the fairness of the process by which a prisoner is held responsible for his conduct, he has to be place on notice as to what is prohibited and the re-sulting punishment for violating the prohibited act. Here, this petitioner was *not* placed on notice of violating any enacted law.

## ISSUE TWO

Changes to the BOP rules must be accomplished through the Administration Procedure Act and where there is a failure to do so, the BOP is precluded from enforcing the proposed rule.

The list of prohibited offenses that prisoner's are required to obey are promulated by the Attorney General of The United States and are set forth in the code of Federal Regulations, see 28 CFR §541 table 3. Changes to this list of prohibited conduct can only be made through provisions of the Administration Procedures Act, see specifically Title 5 USC § 551.

When PAC 108 was implemented by the Attorney General, it was not contemplated that possession of a cell phone or related equipment would be encompassed by it's reach. But in July of 2005, the Attorney General contemplated a change whereas cell phone and cellular equipment possession was specifically included in the language, however this proposed change was NOT IMPLEMENTED.

Here however the BOP decided to charge this petitioner as though the rule change had occurred. The charging of this "108" offense altered the legal consequences of the conduct without the proper notice.

The Petitioner submits that the changes made to the code of Federal Regulations are invalid if not done so in accord with the provisions of the A.P.A., see **National Org. Of Veterans Advocates INC V. Sec't Of Veteran Affairs 260 F.3d 1365, 1375.** The legislative history of the pre-fiat rule is that the act charged against this Petitioner does not constitute a violation of the greater severity PAC. Moreover, as was stated in the proposed change to PAC 108, the Director of the Bureau of Prisons made a determination that the proposed rule change was a **significant regulatory action**, under Executive order 12866, Sec. 3(f).

It's interesting to note that the proposed rule change is the only one that the BOP regularly attempts to utilize as though it had actually been authorized to do so. No other proposed rule changes are being implemented as though actually pursuant to A.P.A procedures.

The BOP should be held by the court to be required to comply with the provisions of the A.P.A. asare all other agencies.

As a result of the BOP's failure to comply with the law concerning the creation or change of it's rules, the BOP cannot be permitted to hold this petitioner accountable for a rule violation when in fact there was no such rule. For this reason, the court should direct that the BOP do expung from this Petitioners record, all sanctions that were imposed and restored to him all goodtime credits that were seized as a result of it's illegal action.

As of filing of this writ, the BOP has reduced other 100 series offenses involving cellphones to the 300 series range, see **HUDSON V ZICKEFOOSE # 10-0251** and **NEAGLE V ZICKEFOOSE # 09-2016,** but, Petitioner here remains charged and sanctioned at the greatest offense level. See EXHIBIT D

## ISSUE THREE

It was held in **Grayned V City of Rockford 408 US 104,** that a law is void for being vague if its prohibition is not clearly defined. This principle is applicable to prison regulations as to laws, **Meyers V Aldrege 492 F.2d 296, 311 (3rd cir. 1974).** But, that principle must be viewed in light of the legitimate needs of prison officials. So as to not undermine the authority of prison officials, the federal courts generally do defer interpretation of prison rules to prison officials, unless fair notice was clearly lacking.

Notice was never given so the requirement is clearly lacking.

Those that enforce the rule in the prison setting have been instructed by their supervisors to ignore the law, and to apply the PAC 108 offense charge to all individuals believed to possess a cellphone or related equipment while incarcerated. The vagueness standard is clearly evident by the language as set forth in the PAC 108 offense charge. The evidence of this lies in this specific instance, the Petitioner was held to answer without notice and to answer to a law/rule that in itself is illegal, if a cell phone or related equipment is encompassed within its reach.

## ISSUE FOUR

This Petitioner has been treated differently from others who are similarly situated within the BOP, this amounts to **Equal Protection violation.**

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall... deny to any person within it's jurisdiction the equal protection of laws", **City of Claebourne V Cleburne Living CTR 473 US 432**, holding that all persons similarly situated should be treated alike".

The key elements of this claim as applicable to this specific Petitioner is that he can demonstrate that he was treated differently from other prisoners similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. First, the BOP, through it's staff, including DHO, knew that in July of 2005, the proposed rule change to PAC 108 was not enacted by the BOP. As a result of the BOP's failure to approve the change, prison officials chose to create this "fiat rule" by approving the method and protocol of changes necessary to establish a new prohibition. What happens is they chose between various inmates found to be in possession of communication devices and randomly charge different PAC offenses, 305, 108, 199. These choices are not made by any definable guideline, but are at the discretion of the staff member. This creates purposeful discrimination based on their like or dislike of the particular individual.

Therefore, there is no legitimate penology interest that would give the prison staff the broad leeway to decide between a PAC 305, 108, or a 199, see **Morrison V Garraghty 239 F.3d 655-56 (2001)**

There actually is no valid rational connection between the adopted policy whereas a non-existent PAC and penological interest, see **Wallace V Nash 311 F.3d 140 (2nd cir 2002)**, if the government perceives that there is an inappropriate gap in the prohibited acts code, it is of course free to add a provision for future use.

The BOP actually has a code for charging prisoners with the act of possessing cell phone and related equipment, it's a contraband type of offense , PAC 305, specifically.

The BOP has available to them, the legally approve option to change or amend the existing rules so as to accomandate it's needs. The BOP at a minimis cost could easily change the policy or the PAC 108 definition so as to encompass the conduct as was proposed in July 2005.

The Petitioner has clearly been treated differently from others that have been found to have possessed a cell phone or related equipment within the prison environment. Petitioner asserts that this different treatment was purposeful and intentional, in violation of equal protection.

## CONCLUSION

The federal Bureau of Prisons has knowingly failed to follow the agency requirements pursuant to 28 C.F.R. and 44 USC § 1507 that requires the agency to judicially notice CFR changes and/or amendments to rules, policies, and regulations pursuant to the Administrative Procedures Act.

There failure to do so precludes them from enforcing the proposed rule as if it had legally been implemented. This Petitioner was never given legal notice, when clearly there is an opportunity to do so. The prohibitions are not clearly defined in PAC 108, however it is clearly defined in PAC 305 which the Petitioner was initial charged with!

Therefore, this amounts to a due process violation. The PAC 108 should not have been utilized by the BOP in this Petitioners instance. In **NEAGLE V ZICKFOOSE #09-2016,** the BOP, just a few days before the governments response was due, threw out the PAC 100 series charge and reduced the offense to a PAC 300 series offense and restored the once removed good time credits. This act of expungment demonstrates that the government is aware of their conduct and it's violation of the law, and in this case this Petitioner is entitled to have his record expunged of all references to the PAC 100 series offense and to have his sanctions lifted as well as restoring Petitioners good-time credits.

This Petitioner therefore does humbly request that this court do order the same for him.

Respectfully Submitted,

Derrek Pannell

```
  FTDJQ         *        INMATE DISCIPLINE DATA          *      09-21-2012
PAGE 001 OF 001 *   CHRONOLOGICAL DISCIPLINARY RECORD    *      09:51:39

REGISTER NO: 74386-053 NAME..: PANNELL, DERREK
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 09-21-2012

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2096807 - SANCTIONED INCIDENT DATE/TIME: 12-02-2010 2110
DHO HEARING DATE/TIME: 04-13-2011 0930
FACL/CHAIRPERSON.....: FTD/A BOYCE
APPEAL CASE NUMBER(S): 653724
REPORT REMARKS.......: ADMITTED CELL PHONE EAR BUDS WERE IN LOCKER. 305 CHANGED
                       TO 108.
    108  POSSESSING A HAZARDOUS TOOL - FREQ: 1 ATI: EYC RFP: D
         DIS GCT     / 40 DAYS / CS
         COMP:010 LAW:P
         DS          / 30 DAYS / CS / SUSPENDED 90 DAYS
         COMP:    LAW:    PENDING CLEAR CONDUCT. SUSPENSION ENDS 07-11-2011
         LP COMM     / 60 DAYS / CS
         COMP:    LAW:    STARTS 04-13-2011 ENDS 06-11-2011
         LP OTHER    / 12 MONTHS / CS
         COMP:    LAW:    LOSS OF TRULINCS PRIVILEGES
                         STARTS 04-13-2011 ENDS 04-12-2012
         LP PHONE    / 12 MONTHS / CS
         COMP:    LAW:    STARTS 04-13-2011 ENDS 04-12-2012
         LP VISIT    / 60 DAYS / CS
         COMP:    LAW:    STARTS 04-13-2011 ENDS 06-11-2011
-------------------------------------------------------------------------------
```

EXHIBIT A

EXHIBIT B

PS 5270.07
CN 12 10/11/2000
Chapter 4, Page 5

**[TABLE 3 (Cont'd)]**
**GREATEST CATEGORY (Cont'd)**

SANCTIONS

| CODE | PROHIBITED ACTS | Sanctions A-G |
|---|---|---|
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition | |
| 105 | Rioting | |
| 106 | Encouraging others to riot | |
| 107 | Taking hostage(s) | |
| 108 | Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade) | |
| 109 | (Not to be used) | |
| 110 | Refusing to provide a urine sample or to take part in other drug-abuse testing | |
| 111 | Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 113 | Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 197 | Use of the telephone to further criminal activity. | |

**GREATEST CATEGORY (Cont'd)**

SANCTIONS

| CODE | PROHIBITED ACTS | Sanctions A-G |
|---|---|---|
| 198 | Interfering with a staff member in the performance of duties. (Conduct must be of the Greatest Severity nature.) This charge is to be used only when another charge of greatest severity is not applicable. | |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Greatest Severity nature.) This charge is to be used only when another charge of greatest severity is not applicable. | |

B

**EXHIBIT #**

70 FR 43093-01

PROPOSED RULES

DEPARTMENT OF JUSTICE

Bureau of Prisons

28 CFR Part 541

[Docket No. BOP-1118-P]

RIN 1120-AB18

Inmate Discipline Rules: Subpart Revision and Clarification

Tuesday, July 26, 2005

AGENCY: Bureau of Prisons, Justice.

*43093 ACTION: Proposed rule.

SUMMARY: In this document, the Bureau of Prisons (Bureau) proposes to amend its Inmate Discipline and Special Housing Unit (SHU) regulations. We intend this amendment to streamline and clarify these regulations, *43094 eliminating unnecessary text and removing internal agency procedures that need not be in rules text. We also make some substantive changes to our list of prohibited acts for which disciplinary sanctions may be imposed and alter the list of possible sanctions available to allow Disciplinary Hearing Officers more flexibility in adapting the sanction to fit the seriousness of the violation.

DATES: Please submit comments by September 26, 2005.

ADDRESSES: Rules Unit, Office of General Counsel, Bureau of Prisons, 320 First Street, NW., Washington, DC 20534. You may also comment via the Internet to BOP at BOPRULES@BOP.GOV or by using the http://www.regulations.gov comment form for this regulation. When submitting comments electronically you must include the BOP Docket No. in the subject box.

FOR FURTHER INFORMATION CONTACT: Sarah Qureshi, Office of General Counsel, Bureau of Prisons, phone (202) 307-2105.

SUPPLEMENTARY INFORMATION: The Bureau proposes to amend its inmate discipline and special housing unit (SHU) regulations (28 CFR part 541, subpart A and subpart B) to streamline and clarify these regulations, eliminating unnecessary text and obsolete language, and removing internal agency procedures that need not be in rules text. We also make some substantive changes to our list of prohibited acts for which disciplinary sanctions may be imposed and alter the list of possible sanctions available to allow Disciplinary Hearing Officers more flexibility in adapting the sanction to fit the seriousness of the violation.

Below, you will find a section-by-section explanation of how we are revising our previous regulations in subpart A and subpart B on Inmate Discipline.

To identify the rules, we will refer first to the section number of the old rule as it currently exists in 28 CFR, and then we will explain what we did to change that rule. Where we are creating a new rule or provision, we will simply refer to it as new.

Section-by-Section Explanation

Section 541.2 Definitions. This rule contains definitions of Investigating Officer, Unit Disciplinary Committee (UDC), Discipline Hearing Officer (DHO), and Segregation Review Official (SRO). In this proposed rule, we remove this regulation and integrate the definitions into the sections discussing the discipline process and special housing units. You can find a definition of Investigating Officer in new § 541.05, UDC in new § 541.07, DHO in new § 541.08, and a description of the SRO's duties in new § 541.26.

Section 541.10 Purpose and scope. Paragraph (a) of former § 541.10 is streamlined and encompassed in the new § 541.01. We have deleted paragraph (b), regarding principles staff must follow when taking disciplinary action, because it is redundant and is

Page 1 of 24

---

covered by several of our new rules, including new §§ 541.01 and 541.06-541.08. We will maintain general principles for staff in Bureau policy.

Section 541.11 Notice to inmate of Bureau of Prisons rules. We have deleted this section because it relates solely to internal agency practice and procedures which we retain in Bureau policy on the Admission and Orientation program. We also remove Tables 1 and 2, Summary of Disciplinary System and Time Limits in the Disciplinary Process, because they are redundant and because we retain it as part of Admission and Orientation materials which we provide to all inmates. We also explain the process and time limits elsewhere in the new disciplinary rules.

Further, in our new § 541.02, we explain to whom the disciplinary process applies. Specifically, we explain that the inmate discipline program applies to sentenced and unsentenced inmates in Bureau custody, as well as sentenced and unsentenced inmates designated to non-Bureau facilities, for example, contract facilities, for whom the Bureau is responsible.

Section 541.12, Inmate Rights and Responsibilities. We remove this section as redundant because we explain elsewhere in the disciplinary rules that the inmate has the responsibility of adhering to the various Bureau rules alluded to in this section, as explained below. We will retain language in this section as a handout during the Admission and Orientation process.

This list was informal, at best, and was more of a shorthand vehicle to give inmates a general overview of the Bureau's rules. It was never intended to be a source of law, and, in fact, inadequately describes inmate rights. Each inmate right on the list is more fully and accurately described elsewhere in 28 CFR Chapter V. Inmates are better informed by going directly to the Bureau rules, which are significant, detailed sources of law, than by using an inadequate and inaccurate list.

Below, we identify where each right on the list is discussed more thoroughly elsewhere in the Bureau's rules.

*1. You have the right to expect that as a human being you will be treated respectfully, impartially, and fairly by all personnel." The inmate's right to expect fair and impartial treatment is found in 28 CFR 551.90, which states as follows: "Bureau staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or other political belief. This includes the making of administrative decisions and providing access to work, housing and programs."

*2. You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution." The inmate's right to information is found in mandatory guidance to staff in our policy on Admission and Orientation, under which inmates will receive a copy of the rights & responsibilities chart removed from rules.

*3. You have the right to freedom of religious affiliation, and voluntary religious worship." The inmate's right to freedom of religion is found in 28 CFR part 548, Religious Services.

*4. You have the right to health care, which includes nutritious meals, proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles and medical and dental treatment." These inmate rights are generally required by 18 U.S.C. 4042(a)(2), which requires the Bureau to "provide for the safekeeping, care and subsistence" of inmates. Medical Services regulations are in 28 CFR part 549. Grooming, clothing, and hygiene regulations are in 28 CFR part 551 (Subpart A). Also, see 28 CFR part 544, Subpart D, Inmate Recreation Programs.

*5. You have the right to visit and correspond with family members, and friends, and correspond with members of the news media in keeping with Bureau rules and institution guidelines."

*6. You have the right to unrestricted and confidential access to the courts by correspondence

Page 2 of 24

---

093-01

on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment."

"7. You have the right to legal counsel from an attorney of your choice by interviews and correspondence."

These inmate rights are found in 28 CFR part 540, Contact with Persons in the Community, which contains regulations regarding visiting and correspondence, including legal mail and visiting.

* "8. You have the right to participate in the use of law library reference *43095 materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program." These inmate rights are discussed at length in our regulations on Legal Matters, 28 CFR part 543.

* "9. You have the right to a wide range of reading materials for educational purposes and for your own enjoyment. These materials may include magazines and newspapers sent from the community, with certain restrictions." Inmate rights to reading materials and receiving publications are found in 28 CFR part 540, subpart F, Incoming Publications, and part 544, subpart I, Education, Training and Leisure-Time Program Standards, and subpart K, Inmate Library Services.

* "10. You have the right to participate in education, vocational training and employment as far as resources are available, and in keeping with your interests, needs, and abilities." Inmate rights to education, training and employment are found in 28 CFR part 544, regarding Education programs and part 545, subpart C, regarding work and compensation.

* "11. You have the right to use your funds for commissary and other purchases, consistent with institution security and good order, for opening bank and/or savings accounts, and for assisting your family." See 28 CFR part 545, subpart B, regarding the Inmate Financial Responsibility Program. In particular, see § 545.10, in which the Bureau

encourages inmates to meet financial obligations through the inmate financial responsibility program. Once more, this program assumes the inmate's right to use their funds, consistent with security and good order.

In sum, every provision in the list of inmate rights is further described and developed elsewhere in the rules it misleading, as its presence assures that this is a finite list of inmate rights. By eliminating this list, we encourage inmates and the public to look at the rules as a whole to get a better picture of inmate rights and responsibilities.

Furthermore, this list implies that these rights are final and all of themselves, whereas they are only absolute as long as they are consistent with the Bureau's actual rules. If an inmate reviews the Bureau rules as a whole, that inmate will get a clearer statement of law than by reviewing a terse and inadequate list.

Section 541.13, Prohibited acts and disciplinary severity scale. Much of this regulation provided technical guidance to Disciplinary Hearing Officers (DHO) and Unit Disciplinary Committees (UDC) regarding types of sanctions, how to impose them, and which sanctions could apply to which inmates. We removed these provisions because they are guidance to Bureau staff, and as internal agency practice, need not be in rules text. We retain thorough guidance to staff on imposing sanctions in Bureau disciplinary policy.

However, in new § 541.03, we retain former Table 3, Prohibited Acts and Disciplinary Severity Scale, as new Table 1, revised for clarity. This comprehensive table explains in detail all the prohibited acts in each of the four severity categories (Greatest [prohibited act series 100], High [prohibited act series 200], Moderate [prohibited act series 300] and Low [prohibited act series 400]) and lists available sanctions that might be imposed for commission of each of these types of prohibited acts. We also made the following changes to this table:

Page 3 of 24

---

70 FR 43093-01

to incorporate technological advances that were not present when the current rule was drafted.

* We establish Greatest and High severity level prohibited acts specifically for sexual assault of any person. Both require non-consensual touching. The Greatest severity level act (114) requires the use or threat of force. The High severity level act (229) is for incidents without the use or threat of force. These codes were created to more specifically place inmates on notice of prohibited behavior.

* We increased the severity level of escapes from non-secure facilities from a 200 (High) to a 100 (Greatest) level prohibited act. In making this change, we eliminate the false implication that escapes from non-secure facilities are not a serious concern.

* We amended prohibited act code 104 (possession of a weapon) to include possession of "any instrument used as a weapon." This terminology change was prompted by the caselaw decision in Wallace v. Nash, 311 F.3d 140 (2d Cir. 2002), which found the current prohibited act did not place inmates on sufficient notice that possession of any instrument actually used as a weapon may be disciplined under this section.

* We establish a new prohibited act code, 115, for destroying and/or disposing of any item during a search or attempt to search. We make this change to more specifically place inmates on notice of this prohibited behavior, which significantly inhibits staff ability to locate and monitor the introduction and possession of contraband within prison institutions.

* We establish a High severity level prohibited act code for escape from a work detail, non-secure institution, or other non-secure custody, including a community facility, with subsequent voluntary return to Bureau of Prisons custody within 4 hours. We make this change to allow for a less severe sanction than that imposed for any other type of escape if an inmate voluntarily chooses to minimize his prohibited act by returning.

* We clarify that possession of a cellular telephone or other electronic communications device is a Greatest level prohibited act. We make this change

Bureau's rules.

* We increase the severity of all school-related offenses from a High to a Greatest prohibited act. We make this change to reflect the parity between using alcohol and other illicit substances as disruptive prison behaviors.

* We establish a High severity level prohibited act code for stalking to take into account the growing problem of female staff being stalked by male inmates. There were far fewer female staff members in prisons when the current rule was drafted.

* We establish a High severity level prohibited act code for possession of stolen property. Under 28 CFR § 553.10, inmates are only allowed to possess property that is authorized and/or given to the inmate by institution staff. Therefore, the only way for an inmate to possess unauthorized property is if it is acquired through an unauthorized channel. All inmate property must be catalogued and accounted for by institution staff. Therefore, if an inmate is in possession of property that was stolen by another inmate, that inmate is just as culpable as the one who stole it, because the inmate in possession of the stolen property was under an obligation to report it to institution staff. Any unauthorized or unreported property is considered contraband.

* We establish a Moderate severity level prohibited act code for circulating a petition to specifically place inmates on notice that such conduct is prohibited. The only approved method for inmates to formally grieve prison conditions is through the Administrative Remedy Program, described in 28 CFR part 542. Under this program, every inmate can raise individual complaints and enjoy three levels of review (at the institution, at the Regional level, and at the Bureau's Central Office). Inmate petitions are prohibited because inmates acting as a group against prison management pose a special risk of disruption which does not exist through the sanctioned, individual administrative remedy complaint system. Circulating a petition *43096 would undermine the effectiveness and legitimacy of the Administrative Remedy Program and

Page 4 of 24

EXHIBIT C

3092-01

ubpart A--Inmate Discipline Program

ec.

41.01 What is the purpose of this subpart?

41.02 Who is subject to the inmate discipline rogram?

41.03 What are the prohibited acts and available anctions?

41.04 When will I lose good conduct sentence redit as a mandatory sanction?

41.05 How does the discipline process start?

41.06 What happens if I am mentally ill?

41.07 What happens at a Unit Discipline Committee's (UDC) review of the incident report?

41.08 What happens at a Discipline Hearing Officer's (DHO) hearing?

Subpart A--Inmate Discipline Program

§ 541.01 What is the purpose of this subpart?

This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program. This program helps ensure the safety, security, and orderly operation of correctional facilities, and to protect the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts. Sanctions will not be imposed in a capricious or retaliatory manner. The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).

§ 541.02 Who is subject to the inmate discipline program?

This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to non-Bureau facilities, for example, contract facilities, and for whom the Bureau is responsible.

§ 541.03 What are the prohibited acts and available sanctions?

(a) Prohibited acts. The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low. We describe the prohibited acts in Table 1--Prohibited Acts and Available Sanctions. Aiding, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself.

(b) Available sanctions. The list of available sanctions for committing prohibited acts is listed in Table 1--Prohibited Acts and Available Sanctions. If you commit repetitive prohibited acts, we can impose increased sanctions, as listed in Table 2--Additional Available Sanctions for Repeated Prohibited Acts Within the Same Severity Level.

Table 1.--Prohibited Acts and Available Sanctions
Greatest Severity Level
Prohibited Acts

----------

100 .......... Killing.
101 .......... Assaulting any person, or an armed assault on the institution's
                secure perimeter (a charge for assaulting any person at this
                level is to be used only when serious physical injury has
                been attempted or accomplished by an inmate).
102 .......... Escape from escort; escape from any secure or non-secure
                institution, including a community facility; escape from
                unescorted community program or activity; escape from outside
                a secure institution.
103 .......... Setting a fire (charged with this act in this category only
                when found to pose a threat to life or a threat of serious
                bodily harm or in furtherance of a

Page 9 of 24

70 FR 43093-01

prohibited act of Greatest
Severity, e.g. in furtherance of a riot or escape; otherwise
        the charge is properly classified Code 218, or 329).
104 .......... Possession, manufacture, or introduction of a gun, firearm,
                weapon, sharpened instrument, knife, dangerous chemical,
                explosive, ammunition, or any instrument used as a weapon.
105 .......... Rioting.
106 .......... Encouraging others to riot.
107 .......... Taking hostage(s).
108 .......... Possession, manufacture, introduction, or loss of a hazardous
                tool (tools most likely to be used in an escape or escape
                attempt or to serve as weapons capable of doing serious
                bodily harm to others; or those hazardous to institutional
                security or personal safety; e.g. hack-saw blade, portable
                telephone, pager, or other electronic communication device).
109 .......... (Not to be used).
110 .......... Refusing to provide a urine sample; refusing to breathe into a
                Breathalyzer; refusing to take part in other drug-abuse
                testing.
111 .......... Introduction or making of any narcotics, marijuana, drugs,
                alcohol, intoxicants, or related paraphernalia, not
                prescribed for the individual by the medical staff.
112 .......... Use of any narcotics, marijuana, drugs, alcohol, intoxicants,
                or related paraphernalia, not prescribed for the individual
                by the medical staff.
113 .......... Possession of any narcotics, marijuana, drugs, alcohol,
                intoxicants, or related paraphernalia, not prescribed for the
                individual by the medical staff.

Page 10 of 24

114 .......... Sexual assault of any person, involving non-consensual touching
                by force or threat of force.
115 .......... Destroying and/or disposing of any item during a search or
                attempt to search.
196 .......... Use of the mail to further criminal activity.
197 .......... Use of the telephone to further criminal activity.
198 .......... Interfering with a staff member in the performance of duties
                most like another Greatest severity prohibited act. This
                charge is to be used only when another charge of Greatest
                severity is not accurate. The offending conduct must be "most
                like" one of the listed Greatest severity prohibited acts.
199 .......... Conduct which disrupts or interferes with the security or
                orderly running of the institution or the Bureau of Prisons
                most like another Greatest severity prohibited act. This
                charge is to be used only when another charge of Greatest
                severity is not accurate. The offending conduct must be "most
                like" one of the listed Greatest severity prohibited acts.

Available Sanctions for Greatest Severity Level Prohibited Acts

A .......... Recommend parole date rescission or retardation.
B .......... Forfeit and/or withhold earned statutory good time or
                non-restored good conduct time (up to 100%) and/or terminate or
                disallow extra good time (an extra good time or good conduct
                time sanction may not be suspended).

Page 11 of 24

393-01

i .......... Disallow ordinarily between 50% and ¾ (27-41 days) of good
                conduct time credit available for year (a good conduct time
                sanction may not be suspended).
...... Disciplinary segregation (up to 12 months).
...... Make monetary restitution.
...... Monetary fine.
...... Loss of privileges (e.g., visiting, telephone, commissary,
                movies, recreation).
...... Change housing (quarters).
...... Remove from program and/or group activity.
...... Loss of job.
...... Impound inmate's personal property.
...... Confiscate contraband.
...... Restrict to quarters.
A .......... Extra duty.

High Severity Level Prohibited Acts

200 .......... Escape from a work detail, non-secure institution, or other
                non-secure custody, including a community facility, with
                subsequent voluntary return to Bureau of Prisons custody
                within four hours.
201 .......... Fighting with another person.
202 .......... (Not to be used).
203 .......... Threatening another with bodily harm or any other offense.
204 .......... Extortion; blackmail; protection; demanding or receiving money
                or anything of value in return for protection against others,
                to avoid bodily harm, or under threat of informing.
205 .......... Engaging in sexual acts.
206 .......... Making sexual proposals or threats to another.
207 .......... Wearing a disguise or a mask.
208 .......... Possession of any unauthorized locking device, or lock pick, or
                tampering with or blocking any lock

Page 11 of 24

device (includes keys),
                or destroying, altering, interfering with, improperly using,
                or damaging any security device, mechanism, or procedure.
209 .......... Adulteration of any food or drink.
210 .......... (Not to be used).
211 .......... Possessing any officer's or staff clothing.
212 .......... Engaging in or encouraging a group demonstration.
213 .......... Encouraging others to refuse to work, or to participate in a
                work stoppage.
214 .......... (Not to be used).
215 .......... (Not to be used).
216 .......... Giving or offering an official or staff member a bribe, or
                anything of value.
217 .......... Giving money to, or receiving money from, any person for the
                purpose of introducing contraband or any other illegal or
                prohibited purpose.
218 .......... Destroying, altering, or damaging government property, or the
                property of another person, having a value in excess of
                $100.00, or destroying, altering, damaging life-safety
                devices (e.g., fire alarm) regardless of financial value.
219 .......... Stealing; theft (including data obtained through the
                unauthorized use of a communications device, or through
                unauthorized access to disks, tapes, or computer printouts or
                other automated equipment on which data is stored).
220 .......... Demonstrating, practicing, or using martial arts, boxing
                (except for use of a punching bag), wrestling, or other forms
                of physical encounter, or military exercises or drill (except
                for drill authorized and conducted by staff).

Page 12 of 24

70 FR 43093-01

221 .......... Being in an unauthorized area with a person of the opposite sex
                without staff permission.
222 .......... (Not to be used).
223 .......... (Not to be used).
224 .......... Assaulting any person (a charge at this level is used when less
                serious physical injury or contact has been attempted or
                accomplished by an inmate).
225 .......... Stalking another person, as evidenced by a pattern of
                contacting the person with an intent to harass, alarm, or
                annoy, after having been warned to stop such conduct.
226 .......... Possession of stolen property.
227 .......... Refusing to participate in a required physical test or
                examination unrelated to testing for drug abuse (e.g., DNA,
                HIV, tuberculosis).
228 .......... Tattooing or self-mutilation.
229 .......... Sexual assault of any person, involving non-consensual touching
                without force or threat of force.
296 .......... Use of the mail for abuses other than criminal activity, and
                which circumvent mail monitoring procedures (e.g., special
                mail abuse; writing letters in code; directing others to
                send, sending, or receiving a letter or mail through
                unauthorized means; sending mail for other inmates without
                authorization; sending correspondence to a specific address
                with directions or intent to have the correspondence sent to
                an unauthorized person; and using a fictitious return address
                in an attempt to send or receive unauthorized
                correspondence).
297 .......... Use of the telephone for abuses other than criminal activity,
                and which circumvent telephone

monitoring procedures (e.g.,
                possession and/or use of another inmate's PIN number;
                third-party calling; third-party billing; using credit card
                numbers to place telephone calls; conference calling; talking
                in code; three-way calls; allowing another inmate to use your
                PIN number; placing another inmate's telephone number on your
                approved telephone list).
298 .......... Interfering with a staff member in the performance of duties
                most like another High severity prohibited act. This charge
                is to be used only when another charge of High severity is
                not accurate. The offending conduct must be "most like" one
                of the listed High severity prohibited acts.
299 .......... Conduct which disrupts or interferes with the security or
                orderly running of the institution or the Bureau of Prisons
                most like another High severity prohibited act. This charge
                is to be used only when another charge of High severity is
                not accurate. The offending conduct must be "most like" one
                of the listed High severity prohibited acts.

Available Sanctions for High Severity Level Prohibited Acts

A .......... Recommend parole date rescission or retardation.
B .......... Forfeit and/or withhold earned statutory good time or
                non-restored good conduct time to 50% or up to 60 days,
                whichever is less, and/or terminate or

Page 12 of 24

EXHIBIT C

3093-01

**Column 1 (top left):**

sallow extra good
conduct time sanction may
not be suspended).
.1 .......... Disallow ordinarily between 25% and
0% (14-27 days) of good
conduct time credit available for year (a
ood conduct time
sanction may not be suspended).
....... Disciplinary segregation (up to 6
months).
I............. Make monetary restitution.
J............. Monetary fine.
K............. Loss of privileges (e.g., visiting,
telephone, commissary,
movies, recreation).
3.............. Change housing (quarters).
4.............. Remove from program and/or group
activity.
I.............. Loss of job.
J............. Impound inmate's personal property.
J............. Confiscate contraband.
L............. Restrict to quarters.
M............. Extra duty.
Moderate
Severity
Level
Prohibited
Acts
300 .......... Indecent Exposure.
301 .......... (Not to be used).
302 .......... Misuse of authorized medication.
303 .......... Possession of money or currency, unless
specifically
authorized, or in excess of the amount
authorized.
304 .......... Loaning of property or anything of
value for profit or
increased return.
305 .......... Possession of anything not authorized
for retention or receipt
by the inmate, and not issued to him
through regular
channels.
306 .......... Refusing to work or to accept a program
assignment.
307 .......... Refusing to obey an order of any staff
member (may be

**Column 2 (top, second):**

categorized and charged in terms of
greater severity,
according to the nature of the order
being disobeyed, e.g.,
failure to obey an order which furthers a
riot would be
charged as 105, Rioting; refusing to obey
an order which
furthers a fight would be charged as 201,
Fighting; refusing
to provide a urine sample when ordered
as part of a
drug-abuse test would be charged as
110).
308 .......... Violating a condition of a furlough.
309 .......... Violating a condition of a community
program.
310 .......... Unexcused absence from work or any
assignment.
311 .......... Insolence towards a staff member.
312 .......... Insolence towards a staff member.
313 .......... Lying or providing a false statement to a
staff member.
314 .......... Counterfeiting, forging, or unauthorized
reproduction of any
document, article of identification,
money, security, or
official paper (may be categorized in
terms of greater
severity according to the nature of the
item being
reproduced, e.g., counterfeiting release
papers to effect
escape, Code 102).
315 .......... Participating in an unauthorized meeting
or gathering.
316 .......... Being in an unauthorized area.
317 .......... Failure to follow safety or sanitation
regulations (including
food preparation, chemical instructions,
tools, MSDS
sheets, OSHA standards).
318 .......... Using any equipment or machinery
which is not specifically
authorized.
319 .......... Using any equipment or machinery
contrary to instructions or

**Column 3 (top, third):**

posted safety standards.
320 .......... Failing to stand count.
321 .......... Interfering with the taking of count.
322 .......... (Not to be used).
323 .......... (Not to be used).
324 .......... Gambling.
325 .......... Preparing or conducting a gambling
pool.
326 .......... Possession of gambling paraphernalia.
327 .......... Unauthorized contacts with the public.
328 .......... Giving money or anything of value to,
or accepting money or
anything of value from, another inmate
or any other person
without staff authorization.
329 .......... Destroying, altering, or damaging
government property, or the
property of another person, having a
value of $100.00 or
less.
330 .......... Being unsanitary or untidy; failing to
keep one's person or
quarters in accordance with posted
standards.
331 .......... Possession, manufacture, introduction,
or loss of a
non-hazardous tool, equipment, supplies,
or other
non-hazardous contraband (tools not
likely to be used in as
escape or escape attempt, or to serve as a
weapon capable of
doing serious bodily harm to others, or
not hazardous to
institutional security or personal safety)
(other
non-hazardous contraband includes such
items as food,
cosmetics, cleaning supplies).
332 .......... Smoking where prohibited.
333 .......... Fraudulent or deceptive completion of a
skills test, e.g.,
cheating on a GED, or other educational
or vocational skills
test.
334 .......... Conducting a business; conducting or
directing an investment
transaction.

**Column 4 (top, fourth):**

affiliation;
participating in gang related
activities; possession of paraphernalia
indicating gang
affiliation.
336 .......... Circulating a petition.
396 .......... Use of the mail for abuses other than
criminal activity which
did not circumvent mail monitoring
procedures.
397 .......... Use of the telephone for abuses other
than criminal activity
which do not circumvent telephone
monitoring procedures
(e.g., inmate calls a number on an
approved list and other
individuals pick-up extension lines and
talk simultaneously;
inmate uses the telephone during
assigned work period; inmate
provides false information to place an
unauthorized
individual on an approved telephone
list).
398 .......... Interfering with a staff member in the
performance of duties
most like another Moderate severity
prohibited act. This
charge is to be used only when another
charge of Moderate
severity is not accurate. The offending
conduct must be "most
like" one of the listed Moderate severity
prohibited acts.
399 .......... Conduct which disrupts or interferes
with the security or
orderly running of the institution or the
Bureau of Prisons
most like another Moderate severity
prohibited act. This
charge is to be used only when another
charge of Moderate
severity is not accurate. The offending
conduct must be "most
like" one of the listed Moderate severity
prohibited acts.
Available
Sanctions

---

3093-01

**Column 1 (bottom left):**

for Moderate
Severity
Level
Prohibited
Acts
A............. Recommend parole date rescission or
retardation.
3.............. Forfeit and/or withhold earned statutory
good time or
non-vested good conduct time up to 25%
J.............. Disallow ordinarily up to 25% (14 days
or up to 30 days,
whichever is less, and/or terminate or
disallow extra good
time (an extra good time or good
conduct time sanction may
not be suspended).
B.1 .......... Disallow ordinarily up to 25% (1-14
days) of good conduct time
credit available for year (a good conduct
time sanction may
not be suspended).
C............. Disciplinary segregation (up to 3
months).
D............. Make monetary restitution.
E............. Monetary fine.
F............. Loss of privileges (e.g., visiting,
telephone, commissary,
movies, recreation).
G............. Change housing from program and/or group
activity.
H............. Remove from program and/or group
activity.
I.............. Loss of job.
J............. Impound inmate's personal property.
K............. Confiscate contraband.
L............. Restrict to quarters.
M............. Extra duty.
Low Severity
Level
Prohibited
Acts
400 .......... (Not to be used).
401 .......... (Not to be used).
402 .......... Malingering, feigning illness.
403 .......... (Not to be used).
404 .......... Using abusive or obscene language.
405 .......... (Not to be used).
406 .......... (Not to be used).
407 .......... Conduct with a visitor in violation of

**Column 2 (bottom, second):**

Bureau regulations.
408 .......... (Not to be used).
409 .......... Unauthorized physical contact (e.g.,
kissing, embracing).
498 .......... Interfering with a staff member in the
performance of duties
most like another Low severity
prohibited act. This charge is
to be used only when another charge of
Low severity is not
accurate. The offending conduct must be
"most like" one of
the listed Low severity prohibited acts.
499 .......... Conduct which disrupts or interferes
with the security or
orderly running of the institution or the
Bureau of Prisons
most like another Low severity
prohibited act. This charge is
to be used only when another charge of
Low severity is not
accurate. The offending conduct must be
"most like" one of
the listed Low severity prohibited acts.
Available
Sanctions
for Low
Severity
Level
Prohibited
Acts
B.1 .......... Disallow ordinarily up to 12.5% (1-7
days) of good conduct time
credit available for year (to be used only
where inmate found
to have committed a second violation of
the same prohibited
act within 6 months); Disallow
ordinarily up to 25% (1-14
days) of good conduct time credit
available for year (to be
used only where inmate found to have
committed a third
violation of the same prohibited act
within 6 months) (a good
conduct time sanction may not be
suspended).
D............. Make monetary restitution.

**Column 3 (bottom, third):**

70 FR 43093-01

E............. Monetary fine.
F............. Loss of privileges (e.g., visiting,
telephone, commissary,
movies, recreation).
G............. Change housing (quarters).
H............. Remove from program and/or group
activity.
I.............. Loss of job.
J............. Impound inmate's personal property.
K............. Confiscate contraband.
L............. Restrict to quarters.
M............. Extra duty.
-----------------------------------------

Table 2.--Additional Available Sanctions for
Repeated Prohibited Acts Within
the Same Severity Level

-----------------------------------------

| Prohibited act severity level | Time period for prior offense (same code) repeated offense | Frequency of Additional available sanctions |
|---|---|---|
| Low Severity (400 level) . | 6 months .. | 2nd offense .. 1. Disciplinary segregation (up to 1 month). |
|  |  | 2. Forfeit earned SGT or non-vested GCT up to 15 days, whichever is less, and/or terminate or disallow an EGT (an EGT suspended). | sanction may not be

**Column 4 (bottom, fourth):**

| | 3rd or more offense .... Any available level sanction (300 series). |
| Moderate severity | |
| Moderate Severity (300 level) ... | 12 months .. 2nd offense .. 1. Disciplinary segregation (up to 6 months). |
| or | 2. Forfeit earned SGT |
| 37 1/2 % or or | non-vested GCT up to up to 45 days, |
| whichever is | less, and/or terminate |
| or | disallow EGT (an |
| EGT sanction | may not be suspended). |
| | 3rd or more offense .... Any available High severity level sanction (200 series). |
| High Severity (200 level) .. | 18 months .. 2nd offense .. 1. Disciplinary segregation (up to 12 months). |
| or | 2. Forfeit earned SGT |
| 75% or up | non-vested GCT up to to 90 days, whichever |
| is less, | and/or terminate or |
| disallow EGT | (an EGT sanction may |
| not be | suspended). |
| | 3rd or more offense .... Any available Greatest severity level sanction (100 series). |
| Greatest Severity (100 | |

# EXHIBIT C

43093-01

**Column 1 (Page 17 of 24)**

level) ....... 24 months .. 2nd or more offense .... Disciplinary segregation (up to 18 months).

§ 541.04 When will I lose good conduct sentence credit as a mandatory sanction?

(a) You will lose good conduct sentence credit as a mandatory disciplinary sanction if you are in one of the following two groups:

(1) VCCLEA-violent inmates. The date of your U.S. Code offense was on or after September 13, 1994, but before April 26, 1996, and you committed a "crime of violence" as defined by the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA); or

(2) PLRA inmates. The date of your U.S. Code offense was on or after April 26, 1996, and, therefore, under the Prison Litigation Reform Act (PLRA), or the date of your District of Columbia (DC) Code offense was on or after August 5, 2000.

(b) If you are an inmate in one of the above groups and commit a prohibited act, you will lose good conduct sentence credit as a mandatory disciplinary sanction. The amount of good conduct sentence credit you will lose depends on the severity level of the prohibited act(s) committed, as follows:

(1) Greatest Severity Level Offenses. You will lose at least 41 days, or 75% of available credit if less than 54 days are available for the prorated period, for each act committed.

(2) High Severity Level Offenses. You will lose at least 27 days, or 50% of available credit if less than 54 days are available for the prorated period, for each act committed.

(3) Moderate Severity Level Offenses. You will lose at least 14 days, or 25% of available credit if less than 54 days are available for the prorated

**Column 2 (Page 17 of 24)**

period, after committing two or more Moderate severity acts during the current year of your good conduct sentence credit-availability.

(4) Low Severity Level Offenses. You will lose at least 7 days, or 12.5% of available credit if less than 54 days are available for the prorated period, after committing three or more Low severity acts during the current year of your good conduct sentence credit-availability.

§ 541.05 How does the discipline process start?

(a) Incident report. The discipline process starts when a staff witness reasonably believes that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

(b) Investigation. After you receive an incident report, a Bureau staff member will investigate it.

(1) Information: The investigator will specifically inform you:

(A) Of the charge(s) against you; and

(B) That you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process. Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).

(2) Statement: When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed. However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.

(3) Informally resolving the incident report: The incident report may be informally resolved at any

Page 17 of 24

**Column 3 (Page 18 of 24)**

stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these rules. If the incident report is informally resolved, it will be removed from your records.

§ 541.06 What happens if I am mentally ill?

If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.

(a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

(b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

§ 541.07 What happens at a Unit Discipline Committee's (UDC) review of the incident report?

A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete. The UDC's review involves the following:

(a) Available dispositions. The UDC will make one of the following decisions after reviewing the incident report:

(1) You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;

(2) You did not commit the prohibited act(s) charged; or

**Column 4 (Page 18 of 24)**

(3) The incident report will be referred to the Discipline Hearing Officer (DHO) for further review, based on the seriousness of the prohibited act(s) charged.

(4) If you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.04, the UDC will automatically refer the incident report to the DHO for further review.

(b) UDC members. The UDC ordinarily consists of two or more staff. UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident.

(c) Timing. The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays. UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution.

(d) Inmate appearance. You are permitted to appear before the UDC during its review of the incident report, except during UDC deliberations or when your presence would jeopardize institution security, at the UDC's discretion.

(1) You may appear either in person or electronically (for example, by video or telephone conferencing) at the UDC's discretion.

(2) You may waive your appearance before the UDC. If you waive your appearance, the UDC will review the incident report in your absence.

(3) If you escape or are otherwise absent from custody, the UDC will conduct a review in your absence at the institution where you were last confined.

(e) Evidence. You are entitled to make a statement and present documentary evidence to the UDC on your own behalf. The UDC will consider all evidence presented during its review. The UDC's decision will be based on at least some facts and, if there is conflicting evidence, the greater weight of the evidence.

Page 18 of 24

**Column 5 (Page 19 of 24)**

43093-01

(f) Sanctions. If you committed a prohibited act(s), the UDC can impose any of the available sanctions listed in Tables 1 and 2, except loss of good conduct sentence credit, disciplinary segregation, or monetary fines.

(g) Referral to the DHO. If the UDC refers the incident report to the DHO for further review, the UDC will advise you of your rights at the upcoming DHO hearing, as detailed in § 541.08.

(h) Written report. You will receive a written copy of the UDC's decision following its review of the incident report.

(i) Appeals. You may appeal the UDC's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.

§ 541.08 What happens at a Discipline Hearing Officer's (DHO) hearing?

The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC. The DHO's hearing involves the following:

(a) Available dispositions. The DHO will make one of the following decisions after a hearing on the incident report:

(1) You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;

(2) You did not commit the prohibited act(s) charged; or

(3) The incident report will be referred back for further investigation, review, and disposition.

(b) Discipline Hearing Officer. The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.

(c) Timing. You will receive written notice of the charge(s) against you at least 24 hours before the

**Column 6 (Page 19 of 24)**

DHO's hearing. You may waive this requirement, in which case the DHO's hearing can be conducted sooner.

(d) Staff Representative. You are entitled to have a staff representative during the DHO hearing process as follows:

(1) How to get a staff representative. You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident. If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one. The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.

(2) How the staff representative will help you. Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing. During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing.

(3) How the staff representative may appear. Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion. If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.

(e) Inmate appearance. You are permitted to appear before the DHO during the hearing on the incident report as follows:

Page 19 of 24

**Column 7 (Page 20 of 24)**

70 FR 43093-01

(1) You may appear either in person or electronically (for example, by video or telephone conferencing), at the DHO's discretion.

(2) Your appearance may be prohibited during DHO deliberations or when your presence would jeopardize institution security, at the DHO's discretion.

(3) You may waive your appearance before the DHO. If you waive your appearance, the DHO hearing will be conducted in your absence.

(4) If you escape or are otherwise absent from custody, the DHO will conduct a hearing in your absence at the institution where you were last confined.

(f) Evidence and witnesses. You are entitled to make a statement and present documentary evidence to the DHO on your own behalf. The DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence. Witnesses may appear at the DHO's hearing as follows:

(1) Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.

(2) The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available. However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.

(3) You or your staff representative may request witnesses appear at the hearing to testify on your behalf. Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.

(4) If your requested witnesses are unavailable to appear, written statements can be requested by

Page 20 of 24

**Column 8 (Page 20 of 24)**

either the DHO or staff representative. The written statements can then be considered during the DHO's hearing.

(5) Only the DHO may directly question witnesses at the DHO's hearing. Any questions by you or your staff representative must be submitted to the DHO, who will present the question to the witness in his/her discretion.

(6) The DHO may consider evidence provided by a confidential informant (CI) that the DHO finds reliable. You will not be informed of the CI's identity. You will be informed of the CI's testimony to the extent it will not jeopardize institution security, at the DHO's discretion.

(g) Sanctions. If you committed a prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2.

(h) Written Report. You will receive a written copy of the DHO's decision following the hearing. The DHO is not required to prepare a verbatim record of the hearing. The DHO's written report will document the following:

(1) Whether you were advised of your rights during the DHO process;

(2) The evidence relied on by the DHO;

(3) The DHO's decision;

(4) The sanction imposed by the DHO; and

*43104 (5) The reason(s) for the sanction(s) imposed.

(i) Appeals. You may appeal the DHO's action(s) through the Administrative Remedy Program, 28 CFR part 542, Subpart B.

Subpart B—Inmate Discipline and Special Housing Units

3. Revise Subpart B to read as follows:

EXHIBIT C

Subpart B—Special Housing Units

Sec.

541.20 What is the purpose of this subpart?

541.21 What are SHUs?

541.22 What is my status when placed in the SHU?

541.23 When can I be placed in administrative detention status?

541.24 When can I be placed in disciplinary segregation status?

541.25 What notice will I receive when placed in the SHU?

541.26 How will my placement in the SHU be reviewed?

541.27 When can I be placed in administrative detention as a protection case?

541.28 How will my placement in the SHU as a protection case be reviewed?

541.29 What happens if staff verify my need for protection?

541.30 What happens if staff cannot verify my need for protection?

541.31 What are the conditions of confinement in the SHU?

541.32 What medical and mental health care will I receive in the SHU?

541.33 When will I be released from the SHU?

Subpart B—Special Housing Units

§ 541.20 What is the purpose of this subpart?

This subpart describes the Federal Bureau of Prisons' (Bureau) operation of special housing units

(SHU) at Bureau institutions. The Bureau's operation of SHUs is authorized by 18 U.S.C. 4042(a)(2) and (3).

§ 541.21 What are SHUs?

SHUs are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population.

§ 541.22 What is my status when placed in the SHU?

When placed in the SHU, you are either in administrative detention status or disciplinary segregation status.

(a) Administrative detention status. Administrative detention status is an administrative status which removes you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public. Administrative detention status is non-punitive, and can occur for a variety of reasons.

(b) Disciplinary segregation status. Disciplinary segregation status is a punitive status imposed only by a Disciplinary Hearing Officer (DHO) as a sanction for committing a prohibited act(s).

§ 541.23 When can I be placed in administrative detention status?

You may be placed in administrative detention status for the following reasons:

(a) Pending Classification. You are a new commitment pending classification.

(b) Holdover Status. You are in holdover status during transfer to a designated institution or other destination.

(c) Removal from general population. Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:

(1) Investigation. You are under investigation or awaiting a hearing for possibly violating a Bureau rule or criminal law;

(2) Transfer. You are pending transfer to another institution or location;

(3) Protection cases. You requested, or staff determined you need, administrative detention status for your own protection.

(4) Post-disciplinary detention. You are ending confinement in disciplinary segregation status, and your return to the general population would threaten the safety, security, and orderly operation of a correctional facility, or public safety.

§ 541.24 When can I be placed in disciplinary segregation status?

You may be placed in disciplinary segregation status only by the DHO as a sanction for committing a prohibited act(s) in the Greatest, High, or Moderate severity categories, or a repeated offense in the Low severity category.

§ 541.25 What notice will I receive when placed in the SHU?

You will be notified of the reason(s) you are placed in the SHU as follows:

(a) Administrative detention status. When placed in administrative detention status, you will receive a copy of the administrative detention order, ordinarily within 24 hours, detailing the reason(s) for your placement. However, when placed in administrative detention status pending classification or while in holdover status, you will not receive an administrative detention order.

(b) Disciplinary segregation status. When you are

§ 541.26 How will my placement in the SHU be reviewed?

Your placement in the SHU will be reviewed by the Segregation Review Official (SRO) as follows:

(a) Three day review. Within three work days of your placement in administrative detention status, not counting the day you were admitted, weekends, and holidays, the SRO will review the supporting records. If you are in disciplinary segregation status, this review will not occur.

(b) Seven day reviews. Within seven continuous calendar days of your placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend. Subsequent reviews of your records will be performed in your absence by the SRO every seven continuous calendar days thereafter.

(c) Thirty day reviews. After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend.

(d) Administrative remedy program. You can submit a formal grievance challenging your placement in the SHU through the Administrative Remedy Program, 28 CFR part 542, subpart B.

§ 541.27 When can I be placed in administrative detention as a protection case?

You may be placed in administrative detention status as a protection case in the following circumstances.

(a) Victim of inmate assault or threats. You were the victim of an inmate assault, or are being threatened by other inmates, including threats of

3093-01

harm if you do not act in a certain way, for example, threats of harm unless you engage in sexual activity.

(b) Inmate informant. Your safety is threatened because you provided, or are perceived as having provided, information to staff or law enforcement authorities regarding other inmates or persons in the community.

(c) Inmate refusal. You refuse to enter the general population because of alleged pressures or threats from *43105 unidentified inmates, or for no expressed reason.

(d) Staff concern. Based on evidence, staff believe your safety may be seriously jeopardized by placement in the general population.

§ 541.28 How will my placement in the SHU as a protection case be reviewed?

(a) Staff investigation. Whenever you are placed in the SHU as a protection case, whether requested by you or staff, an investigation will occur to verify the reasons for your placement.

(b) Inmate consents. If you consent to placement in the SHU as a protection case, you will be reviewed as an ordinary administrative detention case as long as reasons exist to support your placement, or while an investigation is pending to verify the reasons for your placement.

(c) Inmate contests. If you contest your placement in the SHU as a protection case, you will receive a hearing according to the procedural requirements of § 541.26(b) within seven calendar days of your placement in the SHU as a protection case. If the need for your placement in the SHU as a protection case is unnecessary, you may request a hearing under this section. If you remain in administrative detention status following such a hearing, you will be periodically reviewed as an ordinary administrative detention case under § 541.26.

§ 541.29 What happens if staff verify my need for protection?

If a staff investigation verifies your need for placement in the SHU as a protection case, you may remain in the SHU or be transferred to another institution where your status as a protection case may not be necessary, at the Warden's discretion.

§ 541.30 What happens if staff cannot verify my status as a protection case?

If a staff investigation fails to verify your need for placement in the SHU as a protection case, you will be instructed to return to the general population. If you refuse to return to the general population under these circumstances, you may be subject to disciplinary action.

§ 541.31 What are the conditions of confinement in the SHU?

Your living conditions in the SHU will meet or exceed standards for healthy and humane treatment, including, but not limited to, the following specific conditions:

(a) Environment. Your living quarters will be well-ventilated, adequately lighted, appropriately heated, and maintained in a sanitary condition.

(b) Cell Occupancy. Your living quarters will ordinarily house only the amount of occupants for which it is designed. The Warden, however, may authorize more occupants so long as adequate standards can be maintained.

(c) Clothing. You will receive adequate institution clothing, including footwear, while housed in the SHU. You will be provided necessary opportunities to exchange clothing and/or have it washed.

(d) Bedding. You will receive a mattress, blankets, a pillow, and linens for sleeping. You will receive necessary opportunities to exchange linens.

(e) Food. You will receive nutritionally adequate meals.

(f) Personal hygiene. You will have access to a wash basin and toilet. You will receive personal

items necessary to maintain an acceptable level of personal hygiene, for example, toilet tissue, soap, toothbrush and cleanser, shaving utensils, etc. You will ordinarily have an opportunity to shower and shave at least three times per week. You will have access to hair care services as necessary.

(g) Exercise. You will receive the opportunity to exercise outside your individual quarters at least five hours per week, ordinarily on different days in one-hour periods. You can be denied these exercise periods for a week at a time by order of the Warden if it is determined that your use of exercise privileges threatens safety, security, and orderly operation of a correctional facility, or public safety.

(h) Personal property. In either status, your amount of personal property may be limited for reasons of fire safety or sanitation.

(1) In administrative detention status you are ordinarily allowed a reasonable amount of personal property and access to the commissary.

(2) In disciplinary segregation status your personal property will be impounded, with the exception of limited reading/writing materials, and religious articles. Also, your commissary privileges may be limited.

(i) Correspondence. You will receive correspondence privileges according to Part 540, Subpart B.

(j) Telephone. You will receive telephone privileges according to Part 540, Subpart I.

(k) Visiting. You will receive visiting privileges according to Part 540, Subpart D.

(l) Legal Activities. You will receive an opportunity to perform personal legal activities according to Part 543, Subpart B.

(m) Staff monitoring. You will be monitored by staff assigned to the SHU, including program and unit team staff.

(n) Programming Activities. In administrative detention status, you will have access to programming activities to the extent safety, security, orderly operation of a correctional facility, or public safety are not jeopardized. In disciplinary segregation status, your participation in programming activities, e.g., educational programs, may be suspended.

(o) Administrative remedy program. You can submit a formal grievance challenging any aspect of your confinement in the SHU through the Administrative Remedy Program, 28 CFR part 542, subpart B.

§ 541.32 What medical and mental health care will I receive in the SHU?

(a) Medical Care. A health services staff member will visit you daily to provide necessary medical care. Emergency medical care is always available.

(b) Mental Health Care. After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, mental health staff will examine you, including a personal interview. Emergency mental health care is always available.

§ 541.33 When will I be released from the SHU?

(a) Administrative detention status. You will be released from administrative detention status when the reasons for your placement no longer exist.

(b) Disciplinary segregation status. You will be released from disciplinary segregation status after satisfying the sanction imposed by the DHO. The SRO may release you earlier if it is determined you no longer require disciplinary segregation status.

[FR Doc. 05-14637 Filed 7-25-05; 8:45 am]

BILLING CODE 4410-05-P

70 FR 43093-01, 2005 WL 1715380 (F.R.)

END OF DOCUMENT

EXHIBIT C

tia Regulation Tracker - All Documents containing ...

these regulations, eliminating unnecessary text and obsolete language upon request ... [read document]

# EXHIBIT # C

Justia | Supreme Court Center | US Laws | Blawg.FM | BlawgSearch.com

[ Search Justia ]

Justia > Regulation Tracker > Search > All Documents containing "cellular electronic communication", filed by the Prisons Bureau

## Search and Track the Federal Register

Department or Agency: Prisons Bureau

Show: ☑ All ☑ Rules ☑ Administrative Orders ☑ Notices
☑ Proposed Rules ☑ Executive Orders ☑ Proclamations

Regulations ☑ All Dates
Filed: ☐ Between 1 Jan 2005 and 18 Apr 2008

Full Text (optional): cellular electronic communication    [ Search ]

## All Documents containing "cellular electronic communication", filed by the Prisons Bureau

Sorted by Date | Sort by Relevance

Show ☑ All ☑ Proposed Rules    [ Filter Results ]

Subscribe

Results 1-1 of 1

| Document | Doc Number | PDF | Type | Agency |
| --- | --- | --- | --- | --- |
| **July 26, 2005** | | | | |
| Institutional management: Inmate discipline and special housing units | 43093–43105 [05-14637] | PDF | Proposed Rule | Prisons Bureau |

DEPARTMENT OF JUSTICE Bureau of Prisons 28 CFR Part 541 [Docket No. BOP-1118-P] RIN 1120-AB18

Inmate Discipline Rule; Subpart Revision and Clarification SUMMARY: In this document, the Bureau of Prisons (Bureau) proposes to amend its Inmate Discipline and Special Housing Unit (SHU) regulations. We intend this amendment to streamline and clarify Discipline and Special Housing Unit (SHU) regulations...

...administrative order=yes&no... 4/18/2008

[ RSS FEED ] ... MY MSN ... MY YAHOO ... MY AOL ... MyFeedster ...

Copyright © Justia :: Company :: Terms of Service :: Privacy Policy :: Contact Us :: Have a Happy Day!

http://regulations.justia.com/search?agency=201&rule=yes&administrative_order=yes&no... 4/18/2008

---

*Exhibit (3)*

...S.C. 552(e) and delegated to the Director, Bureau of Prisons, we propose to amend 28 CFR part 541 as follows.

SUBCHAPTER C—INSTITUTIONAL MANAGEMENT

ART 541—INMATE DISCIPLINE AND SPECIAL HOUSING UNITS

1. Revise the authority citation for art 541 to read as follows:

Authority: 5 U.S.C. 301; 18 U.S.C. 3621, 522, 3624, 4001, 4042, 4081, 4082 (Repealed in part as to offenses committed on or after November 1, 1987), 4161–4166 (Repealed as to offenses committed on or after November 1, 1987), 5006–5024 (Repealed October 12, 1984 as to offenses committed after that and), 5039; 28 U.S.C. 509, 510.

Subpart A—General

2. Revise Subpart A to read as follows:

Subpart A—Inmate Discipline Program

§ 541.1 What is the purpose of this subpart?

41.01 What is the purpose of the inmate discipline program?

41.02 Who is subject to the inmate discipline program?

41.03 What are prohibited acts and available sanctions?

### TABLE 1.—PROHIBITED ACTS AND AVAILABLE SANCTIONS GREATEST SEVERITY LEVEL PROHIBITED ACTS

§ 541.1 What will I lose good conduct sentence credit as a mandatory sanction?

541.05 How does this discipline process start?

541.07 What happens if I am mentally ill?

541.07 What happens at a Unit Discipline Committee's (UDC) review of the incident report?

541.09 What happens at a Discipline Hearing Officer's (DHO) hearing?

Subpart A—Inmate Discipline Program

§ 541.01 What is the purpose of this subpart?

This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program. This program helps ensure the safety, security, and orderly operation of correctional facilities, and it protect the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts. Sanctions will not be imposed in a capricious or retaliatory manner. The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).

§ 541.02 Who is subject to the inmate discipline program?

This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to non-Bureau facilities, for example, contract facilities, and for whom the Bureau is responsible.

§ 541.03 What are the prohibited acts and available sanctions?

(a) Prohibited acts. The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low. We describe the prohibited acts in Table 1—Prohibited Acts and Available Sanctions. Aiding, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself.

(b) Available sanctions. The list of available sanctions for committing prohibited acts is listed in Table 1—Prohibited Acts and Available Sanctions. If you commit repetitive prohibited acts, we can impose increased sanctions, as listed in Table 2—Additional Available Sanctions for Repeated Prohibited Acts Within the Same Severity Level.

### TABLE 1.—PROHIBITED ACTS AND AVAILABLE SANCTIONS GREATEST SEVERITY LEVEL PROHIBITED ACTS

100 Killing.
101 Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished by an inmate).
102 Escape from escort; escape from any secure or non-secure institution, including a community facility; escape from unescorted community program or activity; escape from outside a secure institution.
103 Setting a fire (charged with this act in this category only when found to pose a threat to life or threat of serious bodily harm or in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).
104 Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.
105 ...using.
106 Encouraging others to riot.
107 Taking hostage(s).
108 Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, portable telephone, pager, or other electronic communication device).
(Not to be used).
110 Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug-abuse testing.
111 Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.
112 Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.
113 Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.
114 Sexual assault of any person, involving non-consensual touching by force or threat of force.
115 Destroying and/or disposing of any item during a search or attempt to search.
196 Use of the mail to further criminal activity.
197 Use of the telephone to further criminal activity.
198 Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act. The conduct must be "most like" one of the listed Greatest severity prohibited acts.
199 Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be "most like" one of the listed Greatest severity prohibited acts.

Available Sanctions for Greatest Severity Level Prohibited Acts

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

---

### TABLE 1.—PROHIBITED ACTS AND AVAILABLE SANCTIONS GREATEST SEVERITY LEVEL PROHIBITED ACTS—Continued

B.1 Disallow ordinarily between 50% and 75% (27–41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 12 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

200 Escape from a work detail, non-secure institution, or other non-secure custody, including a community facility, with subsequent voluntary return to Bureau of Prisons custody within four hours.
201 Fighting with another person.
202 (Not to be used).
203 Threatening another with bodily harm or any other offense.
204 Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.
205 Engaging in sexual acts.
206 Making sexual proposals or threats to another.
207 Wearing a disguise or a mask.
208 Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.
209 Adulteration of any food or drink.
210 (Not to be used).
211 Possessing any officer's or staff clothing.
212 Engaging in or encouraging a group demonstration.
213 Encouraging others to refuse to work, or to participate in a work stoppage.
214 (Not to be used).
215 (Not to be used).
216 Giving or offering an official or staff member a bribe, or anything of value.
218 Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.
218 Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.
219 Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is used).
220 Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff).
221 Being in an unauthorized area with a person of the opposite sex without staff permission.
222 (Not to be used).
223 (Not to be used).
224 Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).
225 Stalking another person, as evidenced by a pattern of contacting the person with an intent to harass, alarm, or annoy, after having been warned to stop such conduct.
226 Possession of stolen property.
227 Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).
228 Tattooing or self-mutilation.
229 Sexual assault of any person, involving non-consensual touching without force or threat of force.
296 Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).
297 Use of the telephone for abuses other than criminal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, the number called, or receiving a telephone call; (third-party telephone calls; using credit card numbers to place telephone calls; and/or use of another inmate's PIN number; third-party calling; third-party talking; using credit card numbers to place telephone calls; conference calling; talking in code; three-way calls; allowing another inmate to use your PIN number; placing another inmate's telephone number on your approved telephone list).
298 Interfering with a staff member in the performance of duties most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be "most like" one of the listed High severity prohibited acts.
299 Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be "most like" one of the listed High severity prohibited acts.

Available Sanctions for High Severity Level Prohibited Acts

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1 Disallow ordinarily between 25% and 50% (14–27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

---

*Exhibit (3)*

**EXHIBIT C**

TABLE 1.—PROHIBITED ACTS AND AVAILABLE SANCTIONS GREATEST SEVERITY LEVEL PROHIBITED ACTS—Continued

C. Disciplinary segregation (up to 6 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

**Moderate Severity Level Prohibited Acts**

300 Indecent Exposure.
301 (Not to be used).
302 Misuse of authorized medication.
303 Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.
304 Loaning of property or anything of value for profit or increased return.
305 Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.
306 Refusing to work or to accept a program assignment.
307 Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, e.g., failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).
308 Violating a condition of a furlough.
309 Violating a condition of a community program.
310 Unexcused absence from work or any assignment.
311 Failing to perform work as instructed by the supervisor.
312 Insolence towards a staff member.
313 Lying or providing a false statement to a staff member.
314 Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, e.g., counterfeiting release papers to effect escape, Code 102).
315 Participating in an unauthorized meeting or gathering.
316 Being in an unauthorized area.
317 Failure to follow safety or sanitation regulations (including safety regulations, chemical instructions, tools, MSDS sheets, OSHA standards).
318 (Not to be used).
319 Using any equipment or machinery which is not specifically authorized.
320 Using any equipment or machinery contrary to instructions or posted safety standards.
321 Failing to stand count.
322 Interfering with the taking of count.
323 (Not to be used).
324 Gambling.
325 Preparing or conducting a gambling pool.
326 Possession of gambling paraphernalia.
327 Unauthorized contacts with the public.
328 Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.
329 Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.
330 Being unsanitary or untidy; failing to keep one's person or quarters in accordance with posted standards.
331 Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies).
332 Smoking where prohibited.
333 Fraudulent or deceptive completion of a skills test, e.g., cheating on a GED, or other educational or vocational skills test.
334 Conducting a business; conducting or directing an investment transaction.
335 Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.
336 Circulating a petition.
337 Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring procedures.
397 Use of the telephone for abuses other than criminal activity which do not circumvent telephone monitoring procedures (e.g., inmate calls at a number an approved list and other individuals pick-up extension lines and talk simultaneously; inmate uses the telephone during an unmonitored individual or an approved telephone list).
398 Interfering with a staff member in the performance of duties most like another Moderate severity prohibited act. This charge is to be used only when another charge of Moderate severity is not accurate. The offending conduct must be "most like" one of the listed Moderate severity prohibited acts.
399 Conduct which disrupts or interferes with the security or orderly running of the Institution or the Bureau of Prisons most like another Moderate severity prohibited act. This charge is to be used only when another charge of Moderate severity is not accurate. The offending conduct must be "most like" one of the listed Moderate severity prohibited acts.

**Available Sanctions for Moderate Severity Level Prohibited Acts**

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

---

TABLE 1.—PROHIBITED ACTS AND AVAILABLE SANCTIONS GREATEST SEVERITY LEVEL PROHIBITED ACTS—Continued

B.1 Disallow ordinarily up to 25% (1–14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 3 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

**Low Severity Level Prohibited Acts**

400 (Not to be used).
401 (Not to be used).
402 Malingering, feigning illness.
403 (Not to be used).
404 Using abusive or obscene language.
405 (Not to be used).
406 (Not to be used).
407 Conduct with a visitor in violation of Bureau regulations.
408 (Not to be used).
409 Unauthorized physical contact (e.g., kissing, embracing).
498 Interfering with a staff member in the performance of duties most like another Low severity prohibited act. This charge is to be used only when another charge of Low severity is not accurate. The offending conduct must be "most like" one of the listed Low severity prohibited acts.
499 Conduct which disrupts or interferes with the security or orderly running of the Institution or the Bureau of Prisons most like another Low severity prohibited act. This charge is to be used only when another charge of Low severity is not accurate. The offending conduct must be "most like" one of the listed Low severity prohibited acts.

**Available Sanctions for Low Severity Level Prohibited Acts**

B.1 Disallow ordinarily up to 12.5% (1–7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1–14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

TABLE 2.—ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL

| Prohibited act severity level | Time period for prior offense (same code) | Frequency of repeated offense | Additional available sanctions |
|---|---|---|---|
| Low Severity (400 level) | 6 months | 2nd offense | 1. Disciplinary segregation (up to 3 months).<br>2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended).<br>Any available Moderate severity level sanction (300 series). |
|  |  | 3rd or more offenses.<br>2nd offense | 1. Disciplinary segregation (up to 6 months).<br>2. Forfeit earned SGT or non-vested GCT up to 37½% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended).<br>Any available High severity level sanction (200 series). |
| Moderate Severity (300 level) | 12 months |  |  |
|  |  | 3rd or more offenses.<br>2nd offense | 1. Disciplinary segregation (up to 12 months).<br>2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended).<br>Any available Greatest severity level sanction (100 series). |
| High Severity (200 level) | 18 months |  |  |
|  |  | 3rd or more offenses. |  |

---

TABLE 1.—PROHIBITED ACTS AND AVAILABLE SANCTIONS GREATEST SEVERITY LEVEL PROHIBITED ACTS—Continued

B.1 Disallow ordinarily up to 25% (1–14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 3 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

**Low Severity Level Prohibited Acts**

400 (Not to be used).
401 (Not to be used).
402 Malingering, feigning illness.
403 (Not to be used).
404 Using abusive or obscene language.
405 (Not to be used).
406 (Not to be used).
407 Conduct with a visitor in violation of Bureau regulations.
408 (Not to be used).
409 Unauthorized physical contact (e.g., kissing, embracing).
498 Interfering with a staff member in the performance of duties most like another Low severity prohibited act. This charge is to be used only when another charge of Low severity is not accurate. The offending conduct must be "most like" one of the listed Low severity prohibited acts.
499 Conduct which disrupts or interferes with the security or orderly running of the Institution or the Bureau of Prisons most like another Low severity prohibited act. This charge is to be used only when another charge of Low severity is not accurate. The offending conduct must be "most like" one of the listed Low severity prohibited acts.

**Available Sanctions for Low Severity Level Prohibited Acts**

B.1 Disallow ordinarily up to 12.5% (1–7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1–14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

TABLE 2.—ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL

| Prohibited act severity level | Time period for prior offense (same code) | Frequency of repeated offense | Additional available sanctions |
|---|---|---|---|
| Low Severity (400 level) | 6 months | 2nd offense | 1. Disciplinary segregation (up to 1 month).<br>2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended).<br>Any available Moderate severity level sanction (300 series). |
|  |  | 3rd or more offenses.<br>2nd offense | 1. Disciplinary segregation (up to 6 months).<br>2. Forfeit earned SGT or non-vested GCT up to 37½% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended).<br>Any available High severity level sanction (200 series). |
| Moderate Severity (300 level) | 12 months |  |  |
|  |  | 3rd or more offenses.<br>2nd offense | 1. Disciplinary segregation (up to 12 months).<br>2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended).<br>Any available Greatest severity level sanction (100 series). |
| High Severity (200 level) | 18 months |  |  |
|  |  | 3rd or more offenses. |  |

EXHIBIT C



*Title 5   APA Act*

§ 553. Rule making

(a) This section applies, according to the provisions thereof, except to the extent that there is involved--

  (1) a military or foreign affairs function of the United States; or

  (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--

  (1) a statement of the time, place, and nature of public rule making proceedings;

  (2) reference to the legal authority under which the rule is proposed; and

  (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply--

  (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

  (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title [5 USCS §§ 556 and 557] apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except--

  (1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

  (2) interpretative rules and statements of policy; or

  (3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

(Added Sept. 6, 1966, P. L. 89-554, § 1, 80 Stat. 383.)

HISTORY; ANCILLARY LAWS AND DIRECTIVES

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

ARGUMENT

**THE DHO REPORT FOR HUDSON'S CONDUCT NOW HAS BEEN AMENDED TO REFLECT A MODERATE CATEGORY OFFENSE FOR PETITIONER'S CONDUCT, AND THE SANCTIONED LOSS OF GOOD CONDUCT TIME HAS BEEN REDUCED ACCORDINGLY. HUDSON HAS BEEN AFFORDED ALL APPROPRIATE RELIEF AVAILABLE UNDER 28 U.S.C. § 2241. THE PETITION MUST BE DISMISSED AS MOOT.**

Art. III, § 2 of the Constitution limits the judicial power of the federal courts to the resolution of "cases and controversies." As a general rule, a case becomes moot when the issues presented in the case no longer present a live controversy or the parties lack a cognizable interest in the outcome. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996). Thus when events transpire that make it ineffectual or unnecessary for the Court to grant a litigant the relief that he seeks, the Court then lacks subject matter jurisdiction to consider the merits of that claim and must dismiss that claim as moot. *Omar v. Mueller*, 501 F.Supp. 2d 636, 638 (D.N.J. 2007), *citing, e.g., Calderon v. Moore*,

15

518 U.S. 149, 149 (1996) and *New Jersey Turnpike Auth. v. Jersey Central Power and Light*, 772 F.2d 25, 30-31 (3d Cir. 1985).

In his instant petition Hudson stated, "[t]here is no dispute that the charged act of misconduct, possession of a cellular phone, is an act of misconduct with the Federal Bureau of Prisons." Doc. 1, p. 17. Hudson contended, however, as "Issue One" that he had not received notice "that the punishment for the charged misconduct had been increased from a moderate level violation to a Greater [sic: Greatest] Severity Level Violation ..." and that he had been "charged incorrectly in the Greatest Severity category, rather than a moderate severity violation." *Id.* All of Hudson's remaining legal arguments [asserted APA violation (Issue Two); "void for vagueness" argument (Issue Three); equal protection argument (Issue Four)] spring from his fundamental contention: that his admitted possession of a cell phone should have been charged and sanctioned as a violation of offense Code 305, a Moderate Severity prohibited act, rather than as a Greatest Severity prohibited act.

The claims asserted in Hudson's petition have been overtaken by subsequent events. As set forth above: on remand and rehearing the DHO at FCI Fort Dix determined, on April 19, 2010, that Hudson had committed the decreased charge of a Code 305 violation, Possession of Anything Not Authorized. The

16

charge of violating Code 199/108 for Incident Report No. 1663469 has been removed from Hudson's Inmate Disciplinary Record and changed to a charge of violating Code 305. Likewise, the GCT disciplinary sanctions previously imposed for violation of Code 199/108 have been removed, and Hudson has been sanctioned to a lesser loss/forfeiture of GCT commensurate with a Moderate Category offense.

Hudson repeatedly has admitted that he possessed a cell phone; he argued that a disciplinary charge and sanctions under Code 305 was appropriate for that infraction of prison rules. All of Hudson's contentions in his petition stem from his having been [initially] charged and sanctioned to loss of GCT, in 2007, under Code 199/108. That charge and those GCT time sanctions for a Greatest Category offense now have been replaced with a reduced charge, and reduced GCT sanctions, for a Moderate Category offense. As a result of this determination, made after this action had commenced, there is no longer a live case or controversy as required for this Court to proceed under Article III, § 2. Hudson has received the relief that he sought in the Administrative Remedy Procedure and properly available on a habeas petition under 28 U.S.C. § 2241. The claims raised in Hudson's petition now are moot, and the petition must be dismissed. *See, e.g., Williams v. Sherman*, 214 Fed. Appx. 264, 266 (3d Cir. 2007) (release from

17

sentence moots challenge to disciplinary sanctions); *Laor v. Federal Bureau of Prisons*, 2009 WL 1064795, *1 (D.N.J., April 8, 2009) (designation to halfway house moots challenge for same), *aff'd*, 340 Fed. Appx. 771 (3d Cir. 2009); *Randall v. Martinez*, 2008 WL 275721 (M.D. Pa., Jan. 30, 2008) (expungement of incident report moots challenge to discipline).

One additional point: in the Conclusion of his petition to this Court, Hudson states that "Greatest Severity PAC shot should be expunged, thrown out and all sanctions dropped" and he "requests for expungement of his incident report Greatest Severity PAC." It is not entirely clear precisely what relief Hudson was requesting of this Court at the time he filed that *pro se* petition. We reiterate: on remand and rehearing, the DHO at FCI Fort Dix found that Hudson had committed a prohibited act consistent with Code 305, Possession of Anything Unauthorized, based on Hudson's acknowledgment (once again) that he had been caught with a cell phone in his possession. The DHO then imposed sanctions amended to reflect a Moderate Category offense, including disallowance of 13 days good conduct time and forfeiture of non-vested good conduct time of 30 days. In his prior pursuit of the Administrative Remedy Procedure; and elsewhere in this petition, Hudson contended that this (admitted) conduct was properly subject to sanctions under Code 305. That has now occurred. That being said, Hudson patently has

18

EXHIBIT D

not demonstrated that, as a matter of relief, he is entitled to complete "expungement" of Incident Report No. 1663469 (he's repeatedly admitted committed the prohibited act of possessing a cell phone), much less that "all sanctions" for that infraction are inappropriate. If, notwithstanding the rehearing, Hudson now disagrees with the amended calculation and imposition of sanctioned loss of GCT for a Code 305/Moderate Category offense, Hudson may appeal that amended DHO Report under the Administrative Remedy Procedure. Unless and until Hudson exhausts the Administrative Remedy Procedure as to the amended DHO Report, however, this Court should not consider any inchoate claim respecting the [reduced] amount of the GCT sanction imposed therein. *See, e.g.,* *Woodford v. Ngo*, 548 U.S. 81, 87-93(2006) (discussing the requirement of proper exhaustion for claims under the Prison Litigation Reform Act and under the habeas corpus statute); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases for habeas petitions). The claims in the present petition, challenging the prior/ now superceded DHO Report, are moot.

19

EXHiBiT D